# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, DC 20549<br><br>   Applicant,<br><br>  v.<br><br>JOHN PAUL WAYMACK<br>1615 Suters Lane, N.W.<br>Washington, DC 20007<br><br>   Respondent. | Misc. No. _____ |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH AN ADMINISTRATIVE SUBPOENA

The Respondent (or "Waymack") has failed to comply with an administrative subpoena ("Subpoena") that was validly-issued and served by the Securities and Exchange Commission ("Commission") as part of a lawful investigation pursuant to Section 21(a)(2) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u(a)(2). In the exercise of its broad discretion, the Commission initiated this investigation with clear statutory authority and in consideration of the factors identified in 15 U.S.C. § 78u(a)(2). The Commission has acted properly at all times and within its powers "to collect information and evidence pertinent to [a] request for assistance" by a foreign securities authority. *Id.* The documents and testimony subpoenaed are relevant to these legitimate purposes. The Respondent has asserted no legitimate and proven excuse for failing to comply with the Subpoena. The Court should therefore order Respondent to show cause why he should not be ordered to comply and, after an opportunity to be heard, should order him to comply fully with the Subpoena, without further delay.

**ARGUMENT**

**I.     This Court Has Jurisdiction and Venue Is Proper for This Application**

When parties refuse to comply with lawful demands under the broad investigative authority of the Commission, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling compliance.  "In case of . . . refusal to obey a subpoena …, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records."  15 U.S.C. § 78u(c).  Venue in this Court is proper because the Commission is conducting its investigation from its office in Washington, D.C., the Subpoena requires Respondent to appear for testimony and produce documents in that office, and Respondent resides or does business in Washington, D.C.  *Id.*

**II.    The Commission's Subpoena Was Properly Issued and Served**

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations.  *See, e.g.*, Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b): "For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."  15 U.S.C. § 78u(b).

On June 13, 2017, the Commission issued its order directing the investigation that is at issue and designating officers to conduct that investigation ("Formal Order").  Greiner Decl. at ¶ 10 & Ex. 4.  The Formal Order granted the staff the authority to issue subpoenas for testimony and documents in aid of the investigation.  *Id.*  The staff prepared and served the June 15, 2017 Subpoena.  *Id*. at ¶ 11 & Ex. 5.  Rule 8 of the SEC's Rules Relating to Investigations provides that investigative subpoenas may be served by several methods, including by express mail, such as United Parcel Service ("UPS").  17 C.F.R. §§ 203.8, 201.150(c)-(d).  Respondent was served

by UPS at his home on June 16, 2017.  Greiner Decl. at ¶ 11.  He does not take any issue that he was properly served, and he has had actual notice of the Subpoena.  He has corresponded with the staff over the Subpoena, *id.* at ¶ 12, and he later hired an attorney to communicate with the staff.  *Id.* at ¶ 13.  Accordingly, a valid Subpoena was issued and properly served on Respondent.

### III.     The Commission's Subpoena Satisfies All Requirements For Enforcement

A district court's role in a proceeding to enforce a subpoena of an administrative agency is "'strictly limited'" "in light 'of the important governmental interest in the expeditious investigation of possible unlawful activity.'"  *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *Fed. Trade Com. v. Texaco, Inc.*, 555 F.2d 862, 871-72 (1977)).[1]  The Commission, in particular, is "entitled to great freedom in conducting its investigations."  *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973).

It is enough for the enforcement of the agency's subpoena "that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry."  *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946).  *See Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 507-09 (1943) (holding that "it was the duty of the District Court" to enforce the subpoena because "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act … to order its production for the Secretary's consideration") ("Congress submitted the administration of the [Walsh-Healey] Act to the judgment of the Secretary of Labor, not to the judgment of the courts."); *SEC v. Deloitte Touche Tohmatsu CPA Ltd.*, 928 F. Supp. 2d 43, 48 (D.D.C. 2013), *objections overruled sub nom. SEC v. Deloitte Touche Tohmatsu CPA Ltd.*, 940 F. Supp. 2d 10 (D.D.C. 2013).  Once an agency satisfies these criteria, the burden shifts to the respondent to demonstrate that the investigative inquiry is unreasonable.  *Brigadoon*

---

[1] The "'very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate.'"  *Id.* at 872-73 (quoting *Federal Maritime Commission v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975)).

*Scotch Distrib. Co*., 480 F.2d 1047 at 1056.  However, where "the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met." *Id.*

In this case, the Commission's inquiry is legally authorized and the information it seeks is relevant to its legitimate inquiry.  Its Subpoena should be enforced.

### A. The Commission's Inquiry And Purpose Is Authorized And Lawful

Congress has given the Commission broad authority and discretion to investigate all manner of possible securities law violations.  Congress has directly authorized the Commission to investigate "in its discretion" "whether any person has violated, is violating, or is about to violate any provision of" the federal securities laws and "the rules or regulations thereunder."  15 U.S.C. §§ 78u(a)(1).  Congress has also, in the same way, directly authorized the Commission "in its discretion" to "conduct such investigation as the Commission deems necessary to collect information and evidence pertinent to [a] request for assistance" from a foreign securities authority in an investigation of possible violations of foreign securities laws.  *Id.* § 78u(a)(2).  "Such assistance may be provided without regard to whether the facts stated in the request would also constitute a violation of the laws of the United States."  *Id.*

The Commission issued its Formal Order of this investigation under 15 U.S.C. § 78u(a)(2), after a request for assistance by the Israel Security Authority ("ISA").  The ISA informed the Commission that it is investigating possible violations of insider trading laws and potentially unlawful misstatements in the public disclosures of a biopharmaceutical company, Kitov Pharmaceuticals Holdings, Ltd ("Kitov").  Greiner Decl. at ¶ 3 & Ex. 1 and 2.  *See also Cohen v. Kitov Pharms. Holdings, Ltd.*, 17-cv-0917, 2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) (a class action suit alleging false statements by Kitov and violation of the securities laws).  The ISA is empowered by the government of Israel to administer, investigate and enforce Israeli laws relating to securities matters and is therefore a "foreign securities authority" as defined in Section 3(a)(50) of the Exchange Act, 15 U.S.C. § 78c(a)(50).  Kitov is

headquartered in Israel and listed on the Tel Aviv Stock Exchange (ticker: KTOV).  Greiner Decl. at ¶ 2.

When the Commission issued its Formal Order, it gave appropriate consideration to the statutory factors in its decision to open the investigation and begin collecting evidence in this matter.  *See id.* at ¶ 10 & Ex. 4; 15 U.S.C. § 78u(a)(2).  The Commission observed that the ISA has undertaken to provide reciprocal assistance in securities matters for the Commission's benefit.  Greiner Decl. at ¶ 9 & Ex. 4.  Indeed, the ISA requested assistance in this case pursuant to the International Organization of Securities Commissions ("IOSCO") Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information ("MMOU"), which is signed by more than a hundred securities authorities, and pursuant to the February 13, 1996 bilateral Memorandum of Understanding between the SEC and the Government of Israel and ISA ("bilateral MOU").  *Id.* at ¶¶ 3, 4 & Ex. 1 and 2.[2]  The Commission and the ISA are each signatories to the MMOU, and the MMOU represents a commitment on the part of the Commission, where possible, to consult, cooperate, and exchange information for securities investigation and enforcement purposes.  *Id.* at ¶ 4.  The Commission and foreign securities authorities make frequent confidential requests for mutual assistance under the MMOU.  *Id.* at ¶ 9.[3]

---

[2] *See also IOSCO, IOSCO MMoU Current Signatories,* https://www.iosco.org/about/?subSection=mmou&subSection1=signatories (last visited Sept. 5, 2018)

[3] The bilateral MOU provides in its Article on "Scope of Assistance" that: "1. The Authorities will provide the fullest mutual administrative assistance, as contemplated by this [MOU].   2. The SEC has the power to investigate suspected violations of the laws or regulations of the United States, which could result in the initiation of administrative, civil or criminal proceedings. The ISA has the power to investigate suspected violations of the laws or regulations of Israel, which could result in the initiation of criminal proceedings.  Accordingly, the Authorities recognize that where the subject matter of a request for assistance by one Authority under this Memorandum of Understanding concerns a suspected violation of its laws or regulations, as that term is defined herein, the subject matter of that request could be susceptible to being investigated as a criminal violation under the laws or regulations of the requested Authority, if the same facts occurred within the jurisdiction of the requested Authority.  3. Assistance within the scope of paragraphs 1 and 2 of this Article will be provided to facilitate the administration and enforcement of laws or regulations, the conduct of investigations, litigation or prosecution in

The June 13, 2017 Formal Order also observed that compliance with the ISA's request for assistance would not prejudice the United States' public interest. *Id*. at Ex. 4. Indeed, Kitov's American Depository Shares are listed on the NASDAQ Capital Market stock exchange. Kitov is a foreign private issuer that made relevant filings, including its annual report on Form 20-F, with the Commission. *Id.* at ¶ 2. And Respondent, the Chairman and Chief Medical Officer of Kitov, lives and works for Kitov in the United States.

Accordingly, the Commission's inquiry is authorized by Congress and its purpose in issuing the Subpoena is lawful. To "collect information and evidence pertinent to the request for assistance" from the ISA concerning potential securities law violations by Kitov and others falls squarely within the scope of the Commission's authority. *See also SEC v. Jerry T. O'Brien, Inc*., 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" it exceeded its authority in issuing an investigative subpoena).

### B. The Commission's Investigation Seeks Relevant Information

The Commission seeks relevant documents and testimony from Respondent by its Subpoena. Courts must enforce the terms of an agency's authorized subpoena if "the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950). Information is reasonably relevant to an administrative investigation when it is "not plainly incompetent or irrelevant to any lawful purpose of the [agency]." *FTC v. Church & Dwight Co*.,

---

cases where information located within the jurisdiction of the requested Authority is needed to determine whether, or prove that, the laws or regulations of the requesting authority may have been violated. Assistance will not be provided where the execution of a request would require the requested Authority to exceed its legal authority or otherwise would be prohibited by the laws of the State of the requested Authority." *Id.* at ¶ 5 & Ex. 2 at Article 3. It also provides, among other things, that "any person giving statements or providing information or documents…all the rights and protections of the laws of the" United States. *Id.* at ¶ 5 & Ex. 2 at Article 6, ¶ 7.

665 F.3d 1312, 1315 (D.C. Cir. 2011) (quoting *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992)). When assessing the relevance of information sought in an administrative subpoena, courts must also defer to the agency's determination of the scope of its investigative authority. *Id*. at 1315 (citing *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001), and *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 965 (D.C. Cir. 1999)).

The Subpoena here seeks documents, communications and testimony relevant to investigating and following leads mandated by the Commission's Formal Order. Prompting the Formal Order, the ISA informed the Commission that it was investigating potential misstatements and insider trading relating to the results of a clinical drug trial for Kitov's drug candidate, KIT-302. Greiner Decl. at ¶ 7. Kitov announced, on December 15, 2015, that the main target of the drug trial was achieved and that there was no need for additional testing; its share price rose by 47% on the news. *Id*. The ISA also informed the Commission that it was looking at the role of various individuals, including Kitov's Data Monitoring Committee ("DMC"), in the reporting of the drug trial results. *Id*. Members of the DMC included, reportedly, statistician Dr. Gloria Crispino and physician Dr. Ofer Sachs. *Id*. Dr. Waymack, the Respondent, is the founder, Chairman, and Chief Medical Officer of Kitov.

The June 15, 2017 Subpoena therefore sought the testimony of Dr. Waymack and made sensible demands of him in view of scope of the ISA's inquiry. The Subpoena demanded the production of documents, agreements and electronic information concerning the DMC (a.k.a. the "Independent Committee") for KIT-302 and "the final results of KIT-302," including information "generated by or for Kitov's Board of Directors." Greiner Decl. at ¶ 11 & Ex. 5. The Subpoena also sought "[d]ocuments sufficient to identify when [Respondent] received the final results of the KIT-302 clinical trial," all "[c]ommunications [c]oncerning the final results of the KIT-302 clinical trial," and all "[c]ommunications between [Respondent] and Dr. Gloria Crispino, or [c]oncerning Dr. Gloria Crispino" and "between [Respondent] and Dr. Ofer Sachs, or [c]oncerning Dr. Ofer Sachs." *Id*. Finally, the Subpoena required the production of all "[c]ommunications between [Respondent] and Mr. Itzhak Israel or [c]oncerning Mr. Itzhak

7

Israel; including but not limited to [c]ommunications [c]oncerning the [DMC] or the final results of KIT-302." *Id.* Mr. Israel is the CEO of Kitov who was arrested in February 2017 on suspicion of publishing misleading information in Kitov's disclosures. *Id.* at ¶ 8 & Ex. 3.

Nothing in these demands by the Commission, or the Subpoena's requirement that Dr. Waymack appear for testimony on these subjects, exceeds the bounds of the Commission's authority from Congress. None of it is "plainly incompetent or irrelevant," *Church & Dwight Co.*, 665 F.3d at 1315, to the Commission's legitimate aim to "conduct such investigation as the Commission deems necessary to collect information and evidence pertinent" to the ISA's request for assistance, 15 U.S.C. § 78u(a)(2). Additionally, while Congress has allowed that assistance to foreign authorities may be provided "without regard to whether the facts stated in the request would also constitute a violation of the laws of the United States," *id.*, Respondent's testimony and documents seem all the more critical to the Commission's legitimate oversight of Kitov, a public company subject to the Commission's own review, given that, as Kitov's Chairman, Dr. Waymack represented to investors that "Kitov stands fully behind the validity of all of its clinical trial results" and authorized it to assert publicly that "Kitov's officers are cooperating fully" with the ISA's investigation and that its "management looks forward to the conclusion of this investigation in the most expeditious manner possible." Greiner Decl. at ¶ 8 & Ex. 3.

In short, the Commission has met its burden for enforcement of the Subpoena, and Respondent should be ordered to comply with its relevant demands in a lawful investigation.

### IV.  Respondent Merely Delays And Has No Valid Excuse For Non-Compliance

Respondent has never contested the general relevance of the subject matter of the Subpoena. Nor has he offered any attack on either the legitimacy of the Formal Order initiating this investigation, the Commission's acts and purposes in issuing the Formal Order, or the legal validity of the Subpoena itself, which was duly served under the Formal Order. Still, he has refused to comply with the Subpoena and offered at various times various reasons for delay.

Respondent first complained of the volume of potentially responsive documents and sought more time to comply with the Subpoena.  *See* Greiner Decl. at ¶ 12 & Ex. 6.  Then, through counsel, he later changed gears and informed the Commission that he was considering whether to assert his Fifth Amendment right against self-incrimination.  *Id.* at ¶ 14.  He refused the dates set forth in the Subpoena for his testimony and offered new dates (where presumably he would appear for testimony but possibly "take the Fifth" during questioning by the staff).  *Id.*  Dr. Waymack later refused to produce any documents in response to the Subpoena, asserting that the "act of production" doctrine shielded him from production of documents and on the possibility of raising his Fifth Amendment claim.  *See id.* at ¶ 15 & Ex. 8.  *See generally United States v. Hubbell*, 167 F.3d 552, 56-69 (D.C. Cir. 1999), *aff'd*, 530 U.S. 27 (2000); *SEC v. Karroum*, 2015 U.S. Dist. LEXIS 164718, *10-11 (Dec. 9, 2015 U.S.D.C.).  He then most recently declined to produce documents or testify (i) because the ISA allegedly invaded his email account under a search warrant but in violation of United States law, (ii) because he is concerned that the ISA may use an adverse inference against him if he were to assert his right against self-incrimination before the Commission, (iii) because Kitov's Israeli counsel is petitioning the ISA to change its investigation from a criminal investigation to an administrative investigation, and the ISA has not yet decided to act on that petition, and (iv) because the Israeli Attorney General has not yet responded to Kitov's January 2018 letter to the Attorney General complaining about the invasion of certain Kitov-related email accounts.  Greiner Decl. at ¶ 22.

Concerning Dr. Waymack possible Fifth Amendment objections, Respondent has yet to articulate any reasonable cause to apprehend a genuine danger of criminal prosecution in the United States.  *See Hoffman v. United States*, 341 U.S. 479, 486 (1951).  The Supreme Court in *United States v. Balsys*, 524 U.S. 666 (1998), expressly held that fear of *foreign prosecution* (as Dr. Waymack has at times appeared to rely upon) does *not* trigger any protections of the Fifth Amendment.  *See id.* at 699-700.  *See also United States v. All Assets Held at Bank Julius Baer & Co.*, 312 F.R.D. 16, 20 (D.D.C. 2015) (noting concerning *Balsys* that "ordinary intergovernmental cooperating in investigating criminal conduct, as permitted by mutual legal

assistance treaties, would 'not rise to the level of cooperative prosecution' sufficient to avoid *Balsys*' holding") (quoting *Balsys*, 524 U.S. at 699). Additionally, as to his blanket refusal to testify, Dr. Waymack may not make a blanket assertion of the privilege by asserting it in advance with respect to all potential questions. He must attend testimony and invoke his Fifth Amendment right against self-incrimination question-by-question, if he truly desires to assert it. *See Dist. Title v. Warren*, 265 F. Supp. 3d 17, 22 (D.D.C. 2017) ("[T]he law is clear that the privilege against self-incrimination must be asserted on a question-by-question basis."). Further, many of the subpoenaed documents that fall within the scope of the Subpoena are business records, documents of Kitov in Dr. Waymack's possession as Chairman or Chief Medical Officer. "In *Braswell v. United States,* 487 U.S. 99, 101 L. Ed. 2d 98, 108 S. Ct. 2284 (1988), the Supreme Court concisely stated the governing law: '[A] corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating. *Id.* at 117." *In re Sealed Case (government Records)*, 950 F.2d 736, 739 (D.C. Cir. 1991). Finally, the Commission's amendment to the Subpoena[4] should have cured any possible objection to producing documents on the basis of the Fifth Amendment. The Commission reframed its document request in the form of search terms to avoid the possibility for Respondent to make testimonial communications by producing documents. Greiner Decl. at ¶ 17 & Ex. 9.[5]

In any case, by January 23, 2018, Dr. Waymack's position appeared to be that he no longer intended to *possibly* raise his Fifth Amendment assertions. His attorney advised the staff on January 23, 2018 that he would neither produce documents nor appear for testimony because

---

[4] The staff delivered a follow-on, amended subpoena on July 23, 2018 in an effort to confront any lingering potential claims to the privilege against self-incrimination and to provide Dr. Waymack a last opportunity to comply. The subpoena set a new date for the production of documents as August 3, 2018, and a new date for two days of testimony (as necessary) starting on October 2, 2018. Dr. Waymack has again produced no documents and appears prepared to ignore the Commission's October 2 testimony date. *See* Greiner Decl. at ¶ 23.

[5] Perhaps predictably, as if to look a gift horse in the mouth, Respondent then began to argue of the cure offered by the SEC that the subpoena is overbroad. *Id.* at Ex. 10. If Dr. Waymack continues to object and refuse compliance with the Subpoena on the basis of merely *potentially* raising his Fifth Amendment rights, these objections are not just undeveloped, but meritless.

the ISA had "intruded" into his emails, "confiscated" documents beyond its authority, and "accessed" his email accounts in "potential" violation of U.S. law. *Id.* at ¶ 15 & Ex. 8. On August 3, 2018, six months later, after the Commission issued a follow-on subpoena, Dr. Waymack reiterated that he would not produce any documents or testify at this time. *Id.* at Ex. 10. Again, with little detail, he objected to "investigative misconduct" by the ISA as the basis for his refusal and stated that the alleged misconduct "raised significant legal and constitutional concerns within the United States." *Id.*

The Respondent did provide with the August 3, 2018 letter a copy of a letter from Kitov to the Israeli Attorney General, dated January 2, 2018. The Kitov letter is written mostly in Hebrew, however. Respondent's counsel wrote that she expects the Commission to translate the letter. *Id.* at ¶ 19 & Ex. 10. Other attached materials are also written in Hebrew. *Id.* at Ex. 10. The materials appear to argue to the Israeli Attorney General that the ISA violated the laws of the United States in securing certain documents in its investigation. *Id.*[6] The materials also refer to a search warrant ordered by an Israeli court in the ISA's investigation. *Id.* at ¶ 19. The ISA provided to the Commission's staff a copy of the search warrant, and the staff has translated the one-page order. *Id.* at Ex. 11. The order provides, among other things, authorization for the ISA and another entity to carry out a search at Kitov's addresses and "other place[s] wherever objects related to [Kitov] are located" to "confiscate any document and object related to the investigation" and, within the scope of this search and the ISA's investigation, gives the ISA:

> permission to access, including ongoing access, files on computers, to issue outputs, and to confiscate any computer, information kept on a computer, and/or digital items that are related to the investigation [and] authorization to those carrying out the search, in order to proceed with the search and investigation, to copy all the computer networks, servers, and computers in the aforesaid search location, and to confiscate backups for said computers, which may be located in the searched location mentioned above or in any other place.

---

[6] The Commission has difficulty further describing Kitov's letter since the Respondent has still not provided an English translation to the Commission. *Id.* at ¶¶ 19-20 & Ex. 10. The Commission does not have a duty to translate these materials for Respondent's convenience.

11

*Id.* The order adds, "[t]he purpose of the computer search and the method of examination used on the confiscated material or its copies is to locate evidence related to the investigation." *Id.*

The August 3, 2018 letter promises to "further detail" Respondent's position "in the near future," *id.* at Ex. 10, and suggests that once the Israeli Attorney General has satisfactorily addressed the issues set out in the January 2, 2018 Kitov letter, Dr. Waymack *might* testify. *Id*. But it has been more than a month since this letter, and Waymack's insistence on not complying is unchanged. If anything, his counsel has now suggested additional reasons to delay possible compliance with the Commission's Subpoena, including Kitov's petition to the ISA to change its investigation from criminal to civil, and Dr. Waymack's concerns about the ISA using adverse inferences from his SEC testimony. In any case, the Commission cannot be held hostage in its ability to conduct a statutorily authorized investigation by allegations from a subpoena recipient of "investigative misconduct" not involving the Commission's conduct, a pending complaint to the Israeli Attorney General concerning such an allegation, or fear of the possible ramifications of the Commission's information collection and investigation under the laws of other countries. These "objections" offer no legitimate excuse for the recipient of a duly-issued Commission subpoena under an appropriate order of the Commission to refuse to comply with the subpoena.

It has now been more than a year since the Commission's June 15, 2017 Subpoena to Respondent. He should be made to full comply with the Subpoena, without further delay.

## CONCLUSION

A district court is bound to enforce an administrative subpoena if it was properly issued and the information sought is reasonably relevant to a legitimate inquiry. The Commission has satisfied these limited requirements, and the Court should enter a show cause order in the form submitted herewith. After an opportunity to respond, the Court should order Respondent to comply fully with the Subpoena, promptly producing all materials and appearing for testimony.

The Commission requests that the Court act expeditiously on this Application so that Respondent's complete failure to comply will not continue to delay this investigation. *See infra* at 3 n.1. *SEC v. First Sec. Bank of Utah*, 447 F.2d 166, 168 (10th Cir. 1971) ("Questions

concerning agency subpoenas should be promptly determined so that the subpoenas, if valid, may be speedily enforced.") (citing *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970)). The Commission asks that Respondent be compelled to testify starting October 2, per the amended subpoena, or at least as soon as possible thereafter. Finally, the Commission requests that the Court (i) retain jurisdiction until such time as there has been full compliance; and (ii) grant such other and further relief as may be necessary and appropriate to ensure compliance.

\* \* \*

The Commission notes that, after preparing its Application and this Memorandum, the Respondent filed a preemptive Friday evening motion to quash the Commission's subpoena. The Respondent did so after the undersigned counsel gave his counsel the requested courtesy of notice of the imminence of this Application. *See* Application at ¶¶ 16-19. The Commission has moved to dismiss that separate matter as improper and lacking an independent jurisdictional basis. As we show there, SEC administrative subpoenas are not self-executing subpoenas – that is, for them to be enforced the SEC must first file a subpoena enforcement application in federal court. Consequently, pre-enforcement challenges to such subpoenas are not permitted. *See*, *e.g.*, *Reisman v. Caplin*, 375 U.S. 440, 446-47 (1964). Also, no statute confers jurisdiction over such a pre-enforcement challenge, and sovereign immunity bars that action and preemptive motion.

Dated: September 17, 2018

Respectfully submitted,

*/s/ Kenneth W. Donnelly*

Kenneth W. Donnelly (DC Bar No. 462996)
Attorney for the Commission

100 F Street, N.E.
Washington, D.C. 20549
Phone: (202) 551-4946
Facsimile: (202) 772-9282
donnellyk@sec.gov