# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Movant, ) ) ) | Misc. Case No. 18-mc-128 (RMC) |
| v. ) ) ) | |
| JOHN PAUL WAYMACK, ) ) ) | |
| Respondent. ) ) | |

## MEMORANDUM OPINION

John Paul Waymack is a citizen of the United States, a transplant surgeon living in Washington, D.C., and the founder, Chairman, and Chief Medical Officer of Kitov Pharmaceuticals Holdings, Ltd., a drug company headquartered in Israel and listed on the Tel Aviv Stock Exchange. The Israel Securities Authority is conducting a criminal investigation of Kitov Pharmaceuticals and has asked the United States Securities and Exchange Commission for assistance by obtaining documents and deposition testimony from Dr. Waymack here in the U.S. Because Dr. Waymack objects, the Securities and Exchange Commission has sought a court order compelling his compliance with its subpoenas.

Dr. Waymack faces a significant difference in criminal law between the United States and Israel. He has rights under the Fifth Amendment to the U.S. Constitution to refuse to answer questions that may incriminate him; no U.S. prosecutor may later cite the silence of a defendant as indicative of guilt. In Israel, however, while a person under investigation can refuse to answer questions, his refusal may be cited as evidence of guilt. Dr. Waymack protests that the Securities and Exchange Commission cannot properly use a civil subpoena to obtain evidence

1

for a criminal investigation or put him in this dilemma between asserting his rights in the U.S. and having it used against him in Israel.

The Court concludes that the Securities and Exchange Commission has statutory authority to proceed as it is but that its subpoenas for documents are unreasonably broad. Therefore, it will grant the Securities and Exchange Commission's motion in part and deny it in part.

## I. FACTS

Kitov Pharmaceuticals is a biopharmaceutical company headquartered in Israel. Its stock is traded on the Tel Aviv Stock Exchange and its American Depository Shares are listed on the NASDAQ Capital Market stock exchange. *See* Appl. of the SEC for an Order to Show Cause and for an Order Requiring Compliance with an Admin. Subpoena (SEC Appl.) [Dkt. 1] at 2. As a foreign private issuer, Kitov must make relevant regulatory filings with the U.S. Securities and Exchange Commission (SEC or Commission). *Id*. Dr. Waymack is the founder, Chairman and Chief Medical Officer of Kitov and a resident of the District of Columbia. *Id*. Founded in the United States, Kitov was moved to, and incorporated in, Israel after it received significant funding from Israeli investors.

The Israel Securities Authority (ISA) is an agency of the Israel government that regulates the trade of securities in Israel and has the authority to investigate Kitov due to its location in Israel and its listing on the Tel Aviv Stock Exchange.[1] *Id*. In March 2017, the ISA requested assistance from the Commission in procuring documents and testimony from Kitov

---

[1] The topic of the ISA investigation is not relevant except that it is criminal in nature. In brief, the ISA was interested in the role of Kitov's Data Monitoring Committee, specifically as it related to "the reporting of [drug] trial results and [related] disclosures." SEC Appl. at 2.

and related persons located in the United States.[2] *Id*. "On June 13, 2017, pursuant to Section 21(a)(2) of the Exchange Act, 15 U.S.C. § 78u(a)(2), the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation captioned In the Matter of Kitov Pharmaceuticals Holdings, Ltd. (the "Formal Order")." *Id*. at 4. The Formal Order described the SEC's authority to issue subpoenas for testimony and documents to Dr. Waymack and Kitov in aid of the ISA's investigation. *Id*.

On June 15, 2017, the Commission served a subpoena on Dr. Waymack, requiring him to produce certain documents by June 30, 2017, and to appear for testimony on September 12, 2017. *Id*. The subpoena was properly served on Dr. Waymack. *Id*. In response to the June 2017 subpoena, Dr. Waymack sought more time to comply and contested the potential volume of responsive documents at issue. *Id*. at 4-5. Counsel for Dr. Waymack also indicated Dr. Waymack was considering asserting his Fifth Amendment right against self-incrimination and refusing to testify. *Id*. at 5.

After prolonged negotiations, on January 23, 2018, Dr. Waymack indicated that he "would neither produce documents nor appear for testimony." *Id*.; *see also* Ex. A-6, Dr. Waymack's Resp. in Opp'n to the Commission's Appl. (Waymack Opp'n) [Dkt. 5], Jan. 23, 2018 Letter from Dr. Waymack's Counsel to SEC (Waymack Jan. 2018 Letter) [Dkt. 5-7]. This denial was based on Dr. Waymack's belief that the ISA is attempting to use the SEC process to obtain legally certain of his documents that the ISA had unlawfully seized through an improperly-executed search warrant in Israel. *See* Waymack Jan. 2018 Letter at 1. Dr. Waymack contends that the ISA had a warrant when it conducted a search at Kitov headquarters

---

[2] The SEC's authority to assist foreign securities agencies with investigations within the United States is discussed in greater detail below.

in Israel but that its agents exceeded the authority of the warrant by collecting documents and emails from Dr. Waymack that were maintained by Google on servers outside of Israel. Waymack Opp'n at 4-7. Specifically, Dr. Waymack states that his email account, which is exclusively based in the United States, was accessed and frozen by the ISA for weeks. *See id*. at 5. Dr. Waymack informed the SEC that Kitov is challenging the validity of that aspect of the search with the Attorney General of Israel, but that no decision has been reached. *See* Waymack Jan. 2018 Letter at 1.

On July 23, 2018, the SEC served Dr. Waymack with a second subpoena for documents and testimony. *See* SEC Appl. at 5-6; *see also* Ex. A-9, Waymack Opp'n, SEC Am. Subpoena [Dkt. 5-10]. Dr. Waymack again refused to testify or provide documents, objecting to the "ISA's investigative misconduct," "significant legal and constitutional concerns within the United States," and the overbreadth of the proposed search terms. Ex. A-10, Waymack Opp'n, Aug. 3, 2018 Letter from Dr. Waymack's Counsel to SEC (Waymack Aug. 2018 Letter) [Dkt. 5-11] at 1-2. The SEC and Dr. Waymack's counsel continued to meet and confer in an attempt to resolve the dispute until September 14, 2018, when both parties filed motions to either compel or quash the outstanding subpoenas. *See* SEC Appl.; Mot. to Quash Am. Subpoena, *Waymack v. SEC*, No. 18-mc-110 (D.D.C. Sept. 14, 2018), ECF No. 1. The Court consolidated the cases in miscellaneous case number 18-mc-128 and the motion has been fully briefed.[3] The Court heard oral argument from the parties on February 12, 2019.

---

[3] *See* SEC Appl.; Mem. of P. & A. in Supp. of the SEC Appl. (SEC Mem.) [Dkt. 1-1]; Waymack Opp'n; Reply Mem. of Law in Further Supp. of SEC's Appl. [Dkt. 6]; Dr. Waymack's Mot. for Leave to File a Surreply [Dkt. 7]; Dr. Waymack's Surreply in Opp'n to SEC's Appl. [Dkt. 7-1]; SEC's Opp'n to Dr. Waymack's Mot. for Leave to File a Surreply [Dkt. 8].

4

## II. LEGAL STANDARDS

### A. Jurisdiction

This Court has jurisdiction under § 21(c) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (Exchange Act), which authorizes the Commission to sue to enforce a subpoena in the jurisdiction in which an investigation is proceeding or the subpoenaed-individual resides. *See* 15 U.S.C. § 78u(c). The investigation is being carried out in the District of Columbia and Dr. Waymack is a resident of the District of Columbia.

### B. Motion to Compel

Section 21(a)(2) of the Exchange Act gives the Commission the authority to assist foreign securities agencies:

> On request from a foreign securities authority, the Commission may provide assistance in accordance with this paragraph if the requesting authority states that the requesting authority is conducting an investigation which it deems necessary to determine whether any person has violated, is violating, or is about to violate any laws or rules relating to securities matters that the requesting authority administers or enforces.

15 U.S.C. § 78u(a)(2). The Commission may provide such assistance "without regard to whether the facts stated in the request would also constitute a violation of the laws of the United States." *Id*. Section 21(b) of the Exchange Act provides the Commission with the power to compel the production of witnesses and records:

> For the purpose of any such investigation, or any other proceeding under this chapter, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpena [sic] witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry.

*Id*. § 78u(b).

In addition to the authority contained in the Exchange Act, the Commission and the ISA are both signatories to the International Organization of Securities Commissions Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information (MMOU). *See* SEC Appl. at 3; *see also* Ex. 1, SEC Appl., MMOU [Dkt. 1-5]. The MMOU "seeks to enhance the sharing of information critical to the successful investigation of securities law violations and sets forth an intent by its signatories to consult, cooperate, and exchange information for the purpose of securing compliance with the laws and regulations of the jurisdictions of those authorities." SEC Appl. at 3. The ISA and the Commission are also signatories to a 1996 bilateral Memorandum of Understanding (Bilateral MOU) between the two agencies. *See id.*; *see also* Ex. 2, SEC Appl., Bilateral MOU [Dkt. 1-5].

In a proceeding to enforce an administrative subpoena, the Court's role is limited to determining "that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents [and testimony] sought are relevant to the inquiry." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946). The respondent may only defeat an administrative subpoena by demonstrating that the inquiry is unauthorized or unreasonable. *See SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973).

### III. ANALYSIS

The Commission argues that its subpoenas are part of an investigation authorized by Congress, that the information sought is relevant to the inquiry, and that Dr. Waymack has no valid argument that the inquiry is unreasonable or to otherwise fail to comply.

Dr. Waymack posits four reasons why the Commission's subpoenas should not be enforced:

> The Commission cannot issue a civil administrative subpoena for
> the sole purpose of furthering a criminal investigation.

> The subpoenas offend the Fourth Amendment of the U.S. Constitution because they are being used to recapture evidence obtained in an unlawful search and seizure.
>
> The subpoenas offend the Fifth Amendment of the U.S. Constitution because negative inferences can be drawn against Dr. Waymack in a criminal trial in Israel should he invoke his right against self-incrimination.
>
> The subpoenas are overly broad and unduly burdensome, effectively requesting production of nearly every communication between Dr. Waymack and his Israeli colleagues and any documents he has related to Kitov.

Waymack Opp'n at 1. Dr. Waymack's first argument is the one to which he gives greatest emphasis; it constitutes an attack on the SEC's authority in this situation. The remaining arguments contest the reasonableness of the inquiry.

### A. SEC's Authorization

Section 21(a)(2) and (b) of the Exchange Act specifically gives the Commission (1) authority to assist foreign securities authorities and (2) power to subpoena testimony and documents as part of an investigation to assist a foreign securities authority. 15 U.S.C. § 21(a)(2) and (b). Dr. Waymack does not contest the statutory authority of the Commission to assist the ISA, but instead argues that the SEC cannot use its civil investigative authority to assist with a criminal ISA investigation. Dr. Waymack relies on *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1387 (D.C. Cir. 1980), to argue that an agency acts in bad faith when it uses its civil investigative authorities "solely for criminal enforcement purposes." *See also United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 307-08, 316 & 316 n.18 (1978) (relating to the Internal Revenue Code). Further, Dr. Waymack quotes the Commission's Enforcement Manual to the same effect:

> It is important that the civil investigation has its own independent civil investigative purpose and not be initiated to obtain evidence for

7

> a criminal prosecution. This does not prevent the staff from taking an action if the action will provide a benefit *to both the SEC's case* and the parallel criminal matter. It does mean, however, that the staff should not take an SEC civil investigative action for which the *sole* aim is to benefit the criminal matter.

Waymack Opp'n at 12 (quoting Securities and Exchange Commission Division of Enforcement, Enforcement Manual § 5.2.1, available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (Nov. 28, 2017) (first emphasis added, second emphasis in original)). The SEC does not say that it has its own ongoing civil or criminal investigation of Dr. Waymack or Kitov, only an investigation to assist the ISA.

The Commission argues that its subpoenas were not issued solely for criminal enforcement purposes but were instead issued pursuant to Congress's explicit authorization for it to engage in reciprocal cooperation with foreign securities authorities. The language of Exchange Act § 21(a)(2) is clear that the Commission can, "in its discretion," "conduct such investigation as the Commission deems necessary" to assist a foreign authority. 15 U.S.C. § 78u(a)(2). Congress cabined the Commission's discretion in two ways: the foreign securities authority must have agreed to reciprocity should the Commission seek its assistance and the Commission's assistance to the foreign authority cannot injure the interests of the United States.

Through the Declaration of Matthew B. Greiner, Assistant Director of the Office of International Affairs of the SEC, the Commission states that the ISA has "previously undertaken to provide assistance to the Commission staff in securities matters of concern to the United States." Decl. of Matthew B. Greiner [Dkt. 1-4] ¶ 9. The Commission also states that the Formal Order of the Commission authorizing the subpoenas included the statement that compliance with the ISA request for assistance would not prejudice the United States' public interest. *See* SEC Mem. at 6; *see also* Ex. 4, SEC Appl., Formal Order [Dkt. 1-5]. Accordingly, the Commission argues, its "inquiry is authorized by Congress and its purpose in issuing the

Subpoena is lawful." SEC Mem. at 6; *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) (commenting on the Commission's "considerable discretion" when conducting a domestic investigation).

The Court finds that the Commission's policy to forego use of a civil investigation solely for the purpose of pursuing criminal charges, as cited by Dr. Waymack, relates to the relationship between the SEC and the Department of Justice (DOJ) and purely domestic investigations. Thus, the policy is consistent with *Dresser* that courts should "not block parallel investigations by [the SEC and DOJ] in the absence of 'special circumstances' in which the nature of the proceedings demonstrably prejudices substantial rights of the investigated party or of the government." 628 F.2d at 1377. *Dresser* refused to extend the Supreme Court's holding in *LaSalle National Bank* that the Internal Revenue Service "may not use its summons authority to investigate possible violations of the tax laws" to the SEC's transmittal of civil investigative materials to the DOJ. *Id*. at 1377; *see also id*. at 1379 ("The language of the securities laws and the nature of the SEC's civil enforcement responsibilities require that the SEC retain full powers of investigation and civil enforcement action, even after Justice has begun a criminal investigation into the same alleged violations."). The SEC policy does not address coordination between the SEC and a criminal investigation by a foreign securities authority.

Congress gave the Commission broad authority to assist foreign securities authorities, many of which—unlike the SEC—have both civil and criminal functions. In so doing, Congress used broad language allowing the SEC to assist "if the requesting authority states that the requesting authority is conducting an investigation which it deems necessary to determine whether any person has violated, is violating, or is about to violate a*ny laws or rules*

*relating to securities matters* that the requesting authority administers or enforces" *regardless of* "whether the facts stated in the request would also constitute a violation of the laws of the United States." *See* 15 U.S.C. § 78u(a)(2) (emphasis added). Congress, therefore, anticipated that the SEC might seek information about actions that are completely lawful in the United States but violate a foreign securities law. With such authority, it does not follow that Congress limited the SEC, a fully civil authority, in its use of a civil subpoena to assist a foreign criminal investigation. The subpoenas issued to Dr. Waymack were consistent with the congressional authorization to assist foreign securities agencies.

### B. Relevance and Reasonableness of the SEC Inquiry

The Commission asserts that it seeks only relevant documents and testimony, arguing that "[c]ourts must enforce the terms of an agency's authorized subpoena if 'the demand is not too indefinite and the information sought is reasonably relevant.'" SEC Mem. at 6 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)). "When assessing the relevance of information sought in an administrative subpoena, courts must also defer to the agency's determination of the scope of its investigative authority." *Id*. at 7 (citing *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315 (D.C. Cir. 2011)). Because the ISA is investigating potential misstatements and insider trading relative to the results of Kitov drug trials, including the Data Monitoring Committee in the reporting of drug trial results, the SEC insists that it makes only "sensible demands" of documents from Dr. Waymack. *Id*.

Dr. Waymack does not challenge the relevance of the subpoenas, but focuses on their reasonableness and overbreadth. He first argues that the subpoenas prejudice the public interest because they compromise his constitutional rights under the Fourth and Fifth

amendments.[4]  Dr. Waymack also argues that the search terms proposed by the Commission are overly broad because they include the terms "Kitov" and "Israel."

   1. *The Public Interest*

Dr. Waymack contends that the Commission's investigation of him prejudices the public interest of the United States because if he responds to the subpoenas he will lose the protections of the Fourth and Fifth Amendments.  He emphasizes that the Bilateral MOU between the SEC and the ISA requires that "any person giving statements or providing information or documents as a result of a request made under this [MOU] . . . be entitled to all the rights and protections of the laws of the jurisdiction of the requested Authority," in this case, the United States.  Bilateral MOU, art. 6, ¶ 7.  Dr. Waymack contends that he is being forced to choose between compliance with the subpoenas and his constitutional rights because (1) any invocation of his Fifth Amendment right to avoid self-incrimination could be used against him in Israel[5] and (2) the ISA is attempting to use the SEC subpoenas to avoid the constitutional prohibition on its use of evidence obtained through an unlawful search and seizure—*i.e.*, the earlier, allegedly unlawful, ISA search and seizure of Dr. Waymack's email account.

The Commission responds that its subpoenas do not deprive Dr. Waymack of any constitutional rights because (1) even if the ISA violated the laws of Israel in conducting its search of Dr. Waymack's Google account, there can be no argument that the ISA violated his

---

[4] *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . .").

[5] Under Israeli law a refusal to answer may be used to imply guilt.  *See* Waymack Opp'n at 15 n.49; *see also* Israeli Crim. Pro. L. Ann. § 162 (1982) ("A defendants' abstention from testifying may corroborate the prosecution's evidence and may also serve as supplemental evidence to the prosecution's evidence, if a need for such supplemental evidentiary assistance arises.").

11

rights under Fourth Amendment because, as a foreign entity, the ISA is not bound by the Fourth Amendment; (2) Dr. Waymack does not argue that the SEC is directly violating the Fourth Amendment by issuing the subpoena; and (3) the Fifth Amendment does not protect from foreign prosecution. Further, the SEC would recognize Dr. Waymack's constitutional right against self-incrimination should he assert the Fifth Amendment in producing documents or answering questions in the United States. The fact that Israel would not recognize the same right under the U.S. Constitution does not bar the SEC from aiding the ISA "in its discretion" since the ISA "is conducting an investigation which it deems necessary to determine whether any person has violated, is violating, or is about to violate any laws or rules relating to securities matters that the [ISA] administers or enforces." 15 U.S.C. § 78u(a)(2).

The Court agrees with the SEC. Although Dr. Waymack's invocation of the Fifth Amendment might be used to infer guilt in Israel, Kitov agreed to be subject to and to abide by Israeli law when its headquarters were moved to Tel Aviv.[6] The Fifth Amendment does not protect individuals from self-incrimination in foreign tribunals. *See United States v. Balsys*, 524 U.S. 666, 669 (1998) ("We hold that concern with foreign prosecution is beyond the scope of the Self-Incrimination Clause."). Additionally, Kitov is currently challenging the legitimacy of the ISA search with the Israeli Attorney General in Israel. This Court does not have the authority to opine or comment on the legitimacy of that search. *See Munaf v. Geren*, 553 U.S. 674, 698 (2008) ("[I]t is axiomatic that an American court does not provide collateral review of

---

[6] Although founder, Chairman, and Chief Medical Officer of Kitov, Dr. Waymack's role and personal responsibilities in overseeing Kitov's actions remain undefined.

12

proceedings in a foreign tribunal.").[7]  The Court finds that the SEC subpoenas do not violate the public interest of the United States.

### 2. *Reasonableness of the Search Terms*

Finally, Dr. Waymack challenges the over-inclusiveness of the SEC's proposed search terms. He argues that requiring him to produce all documents that contain the words "Kitov" and "Israel" will include all emails sent by him because those words are present in his signature block. Waymack Opp'n at 16. He also argues that the remaining search terms are not targeted to seek only materials relevant to the Data Monitoring Committee and, specifically, its involvement with the approval of the drug, Consensi™. *Id*. at 16-17. The SEC does not adequately counter Dr. Waymack's objection or explain why all documents with the words "Kitov" and "Israel" would be relevant to its inquiry, but merely argues the search terms are reasonable because they are limited in number and time.[8] Under these circumstances, in which the terms "Kitov" and "Israel" are in Dr. Waymack's signature line on all of his emails, the Court finds it is unreasonable to require production of all documents with those terms, even for a limited time period. The SEC will be ordered to craft search terms that are targeted to identify relevant documents.

---

[7] Dr. Waymack requests, in the alternative, for postponement of his compliance with the SEC subpoenas until after the Israeli Attorney General rules on the legitimacy of the ISA search. The Court finds no reason to further delay compliance under any of the theories he argues.

[8] During the motion hearing on February 12, 2019, the SEC represented it would be willing to negotiate with Dr. Waymack over the search terms, but due to his refusal to comply with the subpoenas in their entirety the parties had not yet reached that point in their discussions. Counsel for both parties then agreed that the scope of the subpoenas can be resolved between them and need not be argued.

## IV.  CONCLUSION

The Court will grant in part and deny in part the SEC's application for an order to show cause and for an order requiring compliance with its administrative subpoenas [Dkt. 1]. The Court will require Dr. Waymack to comply with the SEC's subpoenas for testimony and documents but will require the SEC to craft search terms that are targeted to identify relevant documents.  The parties will be ordered to meet and confer about reasonable search terms within the next two weeks and the Court will retain jurisdiction to resolve any disputes, if needed.  A memorializing Order accompanies this Memorandum Opinion.


Date: February 19, 2019

ROSEMARY M. COLLYER
United States District Judge